**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>DENARD DARNELL OF THE FAMILY NEAL,<br><br>        **Defendant.** | **1:11-cr-297-LJO**<br><br>**MEMORANDUM DECISION AND ORDER RE PETITIONER'S § 2255 MOTION (Doc. 113), MOTION TO DISMISS (Doc. 117), AND MOTION FOR RECUSAL (Doc. 118)** |

## I. <u>INTRODUCTION</u>

Defendant Denard Darnell of the Family Neal ("Petitioner"), a federal inmate proceeding *pro se*, moves (1) for the undersigned to be recused from this case (Doc. 118); (2) to dismiss this case and his resultant sentence for lack of jurisdiction (Doc. 117); and (3) to vacate, set aside, or reduce his sentence under 28 U.S.C. § 2255 ("§ 2255") (Doc. 119). The Government opposes the motions in their entirety. *See* Docs. 119, 120.  For the following reasons, the Court DENIES Petitioner's motions.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The Court draws the facts of Petitioner's case from the Ninth Circuit's opinion affirming his conviction and sentence:

> In 2010, Neal was serving a sentence for armed robbery in the United States Penitentiary, Atwater ("USP–Atwater") in Merced County. While processing another prisoner for release from the penitentiary, USP–Atwater guards discovered a package that Neal had given the prisoner to mail for Neal once released. Upon inspecting Neal's package, the guards discovered various handwritten documents. Four of the documents were titled "Security Agreement Commercial Lien," identifying Neal as the secured party and fourteen USP–Atwater employees as debtors. Each Security Agreement was accompanied by a standardized Uniform Commercial Code ("UCC") Financing Statement ("UCC–1"). The Security Agreements and UCC–1 Financing Statements ("Lien Documents") indicated that the identified USP–Atwater employees owed Neal

1

1   amounts ranging from five thousand to forty-five million dollars, arising from their alleged
    criminal activities that caused Neal harm. Each Lien Document listed collateral for the lien as the
2   employee's "oath of offices and all collateral related to the bonds that support, endorse the oath
    of offices." According to the Lien Documents, the "liens were to remain in place for 100 years,"
3   or until Neal was paid in full.

4           Included with the Lien Documents was a cover letter from Neal to his mother. In the
    letter, Neal asked his mother to type the documents. Neal also gave his mother step-by-step
5   instructions for correctly filing the documents with the California Secretary of State and the
    County Recorder in Merced County on his behalf. Neal advised his mother that the "value of
6   each oath of office [could] be found in the Security Agreement and matching UCC–1." Neal
    wanted his mother to act quickly. Once the documents were filed, Neal wanted to "present the
7   documents to the Department of Justice and get [the USP–Atwater employees] fired."

8           Lastly, a letter addressed to Deputy Assistant Attorney General Daniel Koffsky was
    included in the packet. The letter claimed to provide "Actual and Constructive Notice" that Neal
9   had "filed and registered the enclosed government officials['] Oath of Offices with the
    [California] Secretary of State."
10
            After discovering Neal's Lien Documents, the FBI interviewed Neal about his attempt to
11  file liens against the USP–Atwater employees. In the interview, Neal affirmed he wrote the
    documents. Neal told the agent the fourteen USP–Atwater employees had committed crimes
12  against him. Because of their crimes, Neal concluded the employees should be fired and should
    also monetarily compensate him. As a result of the information obtained in the interview and in
13  Neal's packet, Neal was charged with fourteen counts of attempting to file false liens and
    encumbrances against the real or personal property of fourteen officers and employees of USP–
14  Atwater, in violation of 18 U.S.C. § 1521 . . . .

15          After [a] two-day jury trial, Neal was convicted on all fourteen counts. The district court
    sentenced Neal to 87–months' imprisonment on each of the fourteen counts, to be served
16  concurrently with each other but consecutively to any prior, undischarged term of imprisonment.

17  *United States*, 776 F.3d 645, 649-51 (9th Cir. 2015). The Ninth Circuit affirmed in all respects. *Id.* at

18  662.

19          Petitioner now requests that the undersigned be recused and that his sentence be vacated. The

20  thrust of Petitioner's recusal motion is his claim that the undersigned conspired with the U.S. Attorney's

21  Office, the Department of Justice, and the "United States as a whole" to violate Petitioner's rights and,

22  in so doing, did violate Petitioner's rights. *See* Doc. 118 at 2-3. As a result, Petitioner asserts the

23  proceedings in this case have been unfair, a sham, and otherwise illegal. *Id.* Petitioner also contends the

24  undersigned has "a financial interest in this case and has "refus[e]d to be honest, professional, [and]

25  neutral." *Id.* at 4. Further, Petitioner argues the Court has become a "Trustee" with fiduciary duties for

                                                  2

1    the entity "Denard Darnell Neal." *Id.* at 2. For these reasons, Petitioner argues the undersigned should be

2    recused. *Id.* at 4.

3        All of the bases for Petitioner's 11-page dismissal motion is not entirely clear. But Petitioner

4    clearly maintains and states his view that this Court has lacked and continues to lack jurisdiction over

5    him. *See* Doc. 117 at 4. He therefore "seek[s] the [e]xpungement of [his] conviction, trial, and

6    indictment from the record" for lack of jurisdiction. *Id.* at 9.

7        Petitioner's § 2255 motion and reply total more than 100 pages and assert numerous arguments,

8    almost all of which are unclear, unintelligible, or wholly lacking factual or legal support. Petitioner

9    frames his motion in fourteen "Questions," which constitute the primary arguments in support of the

10   motion. The Court agrees with the Government's observation that Petitioner's § 2255 motion, including

11   his reply, "essentially raises six types of errors," which are:

12       1. A group of claims based on "Sovereign Citizen" ideology (Questions One through Four, Six,
         Nine, Eleven, and Thirteen);
13       2. The Court improperly prevented discovery, argument, and evidence regarding misconduct of
         USP-Atwater Officials (Questions Four, Eight, and Ten);
14       3. Government agents stole the Petitioner's "legal materials" (Question Five);
         4. An April 2012 habeas application was wrongly filed and adjudicated (Question Seven);
15       5. The Ninth Circuit violated the "right" to self-representation on appeal (Question Twelve); and
         6. Appellate counsel was constitutionally ineffective (Question Fourteen).
16
     Doc. 119 at 2 (footnote omitted).

17
                                    **III. <u>DISCUSSION</u>**
18
     **A.    Petitioner's Recusal Motion.**
19
         Petitioner claims the undersigned should be recused from this case. "Typically, the Supreme
20
     Court has only mandated recusal when a judge has a direct, personal, or substantial connection to the
21
     outcome of a case or to its parties." *In re Complaint of Judicial Misconduct*, 816 F.3d 1266, 1267 (9th
22
     Cir. 2016). The undersigned has not at any time had a connection to the parties in this case or its
23
     outcome. Petitioner has not provided any reason, let alone a valid or substantiated reason, for the
24
     undersigned's recusal. Accordingly, Petitioner's recusal motion (Doc. 118) is DENIED.
25

                                             3

**B.      Petitioner's Dismissal Motion.**

In his dismissal motion, Petitioner essentially argues that all of this case's proceedings are invalid because the Court has never had jurisdiction. *See* Doc. 117 at 2-3. This Court has "original jurisdiction . . . [over] all offenses against the laws of the United States." 18 U.S.C. § 3231. This includes jurisdiction over Petitioner's violation of 18 U.S.C. § 1521. Accordingly, Petitioner's dismissal motion (Doc. 117) is DENIED.

**C.      Petitioner's § 2255 Motion.**

**1.      Legal Standard**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

**2.      Analysis**

As noted, Petitioner's 75-page § 2255 motion contains numerous arguments organized in fourteen "Questions."[1]

Distilled, Questions One, Two, Three, Six, Nine, Eleven, and Thirteen concern Petitioner's position that the Court has never had jurisdiction over Petitioner and therefore the proceedings in this

---

[1] Petitioner's reply simply re-hashes and repeats the arguments contained in his § 2255 motion.

1    case have been illegal and unauthorized. The Court disagrees; the Court has had appropriate jurisdiction

2    at all relevant times. *See* 18 U.S.C. § 3231. Petitioner has provided no authority or argument that

3    suggests otherwise.

4         Question Four concerns Petitioner's argument that the Court conspired with the U.S. Attorney's

5    Office to violate Petitioner's Sixth Amendment rights by granting the Government's motion to preclude

6    Petitioner from arguing and presenting evidence about "the Sovereignty concept as a defense." Doc. 113

7    at 23.[2] Because the "Sovereign Citizen" defense is invalid and inadmissible, precluding Petitioner from

8    asserting it did not violate the Sixth Amendment.

9         In Question Five, Petitioner argues that the U.S. Attorney's Office, the Bureau of Prisons, the

10   Federal Bureau of Investigation, and the Court worked in conjunction to prevent Petitioner's access to

11   various legal materials. Doc. 113 at 30. Petitioner claims this alleged misconduct "violates every Article

12   and Bill of Rights embodied within the United States Constitution." *Id.* at 31. The only viable argument

13   in Question Five is that the Government's allegedly seizing Petitioner's legal materials violated the

14   Sixth Amendment. *See Taylor v. List*, 880 F.2d 1040, 1047 (9th Cir. 1989). Even assuming the

15   Government seized or withheld Petitioner's legal materials as he contends, to establish a Sixth

16   Amendment violation, Petitioner must prove that he was denied access to legal materials and that denial

17   prevented him from meaningfully representing himself. *See Milton v. Morris*, 767 F.2d 1443, 1446-47

18   (9th Cir. 1985); *U.S. v. Farias*, 618 F.3d 1049, 1053 (9th Cir. 2010). Petitioner does not explain what

19   these allegedly seized legal materials were, what his defense was, how the materials were relevant to his

20   defense, or how his inability to access them affected his defense.

21        Petitioner asserts in Question Seven that the Court's denial of his habeas petition, challenging the

22   constitutionality of 18 U.S.C. § 3231, was invalid. The Court disagrees. On appeal from the Court's

23   ────────────────────

24   [2] "Adherents to the 'sovereign citizen' philosophy," such as Petitioner, "typically 'believe that they are not subject to
     government authority." *Vazquez v. Calif. Highway Patrol*, No. 2:15-cv-756-JAM-EFB PS, 2016 WL 232332, at *2 (E.D. Cal.
     Jan. 19, 2016). Courts have uniformly rejected any and all arguments premised on the philosophy. *See, e.g.*, *United States v.*

25   *Alexio*, No. 13-01017 JMS, 2015 WL 40691690, at *2-4 (collecting cases rejecting the "sovereign citizen" philosophy as
     frivolous, irrational, or unintelligible). This Court also rejects any "sovereign citizen" arguments or theories.

5

1  denial of the petition, the Ninth Circuit held that "[b]ecause the appeal is so insubstantial as to not

2  warrant further review, it shall not be permitted to proceed." *Neal v. United States*, 1:12-cv-708-LJO-

3  JLT, Doc. 9 at 1.

4        Questions Eight and Ten, though relatively unclear, appear to suggest that the Court's denying

5  Petitioner's discovery requests and precluding Petitioner from presenting evidence concerning

6  misconduct of USP-Atwater employees violating his constitutional rights or was otherwise illegal. *See*

7  Doc. 113 at 40; Doc. 27. Petitioner has provided no meaningful argument in support, and the Court

8  cannot conceive of one. As the Government correctly observes, any such evidence would not have

9  established a defense; it most likely would have provided more proof of Petitioner's motive for

10 committing the crimes of which he was committed. *See Neal*, 776 F.3d at 650 ("Neal did not dispute that

11 he created and attempted to file the Lien Documents. Instead, Neal argued his liens were not criminal,

12 because USP–Atwater employees had engaged in various criminal activities causing him personal harm

13 and losses.").

14       Petitioner argues in Question Twelve that the Ninth Circuit abused its discretion in appointing

15 counsel for Petitioner on appeal. Doc. 113 at 50. The Court will not consider this argument because the

16 Court has no authority to question the Ninth Circuit's decisions.

17       Finally, in Question Fourteen, Petitioner contends that his court-appointed appellate counsel,

18 John Balazs, was ineffective because he refused to present certain arguments on appeal. Specifically,

19 Mr. Balazs apparently refused to argue Petitioner's contention that this Court lacked jurisdiction and is

20 not an Article III court. Even if this occurred, it does not demonstrate that Mr. Balazs's representation of

21 Petitioner was objectively unreasonable or that the outcome of Petitioner's appeal would have been

22 different had he made Petitioner's requested arguments. *See Strickland v. Washington*, 466 U.S. 668,

23 688 (1984). There is no indication that Mr. Balazs's representation of Petitioner was deficient in any

24 respect.

25       The Court has attempted to decipher and understand Petitioner's dozens of arguments. Almost all

of them are unintelligible, irrational, or wholly baseless. None of them, however, has any merit. Simply put, Petitioner has failed to provide any meaningful argument that suggests he was sentenced in violation of the Constitution or the laws of the United States. Nor has Petitioner established that the Court lacked jurisdiction at any time. Accordingly, the Court DENIES Petitioner's § 2255 motion.

### C. Certificate of Appealability

Petitioner cannot appeal from the denial of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a Petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the Court has denied a § 2255 motion on the merits, a Petitioner must show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. *Id.* at 483. Accordingly, the Court declines to issue a certificate of appealability.

## IV. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Court DENIES:

1. Petitioner's § 2255 motion (Doc. 113);

2. Petitioner's dismissal motion (Doc. 117);

3. Petitioner's recusal motion (Doc. 118).

The Court also DECLINES to issue a certificate of appealability for Petitioner's § 2255 motion. Accordingly, the Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:   **May 18, 2016**                         **/s/ Lawrence J. O'Neill**
                                              UNITED STATES CHIEF DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25